The opinion or tne uourt was delivered ny
RICHARDSON, J.
The motion for a nonsuit cannot prevail, because the rule of pleading is established, that defendant must take advantage of the non-joinder of a co-executor, by pleading in abatement, after oyer of the probate. This is the distinction when the plaintiff sues in right of another, and when he sues in his own right. In the latter case, the omission may be the cause of nonsuit, but not in the former. 1 Chitty, 13. 1 Saund. 291.
The verdict, too, as to the amount of damages, is supported by the testimony which need not be more particularly narrated. This was a question for the jury ; and the verdict is not enormous.
As to the possession of the negroes by Charles *Goodwin, it evidently appears from the evidence of Benjamin Sims, that it was L not adverse from the plaintiff’s testator, but really his possession.
But I hasten to the ground relied upon by the defendants, and seri *414 ously argued by their counsel for a new trial, to wit: Because the jury presumed fraud, in finding for the plaintiff, of which there was no proof.
The question submitted to this Court is, can the -verdict which deprives the children of Mrs. Goodwin of these negroes in favor of a bona fide purchaser, for valuable consideration, from C. Goodwin, her husband, and without notice of the settlement in trust, be supported by the testimony ?
The facts were as follows : In May, 1799, Charles Goodwin, the husband, styling himself agent of Chamberlain, and John Goodwin, trustees of Elizabeth, the wife of the said Charles, purchased one of the negroes in dispute. In January, 1801, the said Charles'Goodwin, styling himself as before, purchased the other negroes. The consideratipn money was said to be received of the trustees, by the hands of the said Charles, and the negroes to be holden in trust for Elizabeth, his wife, and her children. On the 23d May, 1801, Charles Goodwin wrote to the plaintiff’s testator, Ambrose Gordon, parts of which letter I will refer to. On the 6th January, 1802, Charles Goodwin, in consideration of $1550, con.veyed the negroes named in the letter, to Ambrose Gordon, under which conveyance his executrix now sues. The bills of sale to Charles Goodwin, as agent, are in his handwriting, and never recorded; nor does it appear that Ambrose Gordon could have had notice of them. The ne-goes appeared, of course, as the property of Charles Goodwin, who held possession of them, and described them as his own property. This letter avows his pecuniary embarrassment. In this situation he sells the ne-groes, to all appearance, his own, to A. Gordon. If Charles Goodwin, thus embarrassed, paid the consideration money for these negroes to Hammond and Richardson, out of his own pocket, *though he -* took a bill of sale, which he kept in secret, for his wife and children, it would require a kind of hardihood to contend seriously, that there would not be grounds to presume a fraud, even at common law. And we would much more readily conclude there was a fraud under the statute of 27 Eliz. made expressly to protect purchasers for valuable consideration, against voluntary settlements of that kind.
But did not Charles Goodwin actually pay the money out of his own estate? He did pay it; drew the bills of sale to himself, kept them in secret, and used the negroes as his own. On the other hand, he styles himself agent of certain trustees, which may suppose a trust fund. But are not these susceptible of easy proof? And can the mere expression of the •husband, because put into writing, when he is himself charged with the fraud in covering his own estate, and deeply interested, can his mere expression be received as any proof whatever ? I conceive not. But let it be called the expression of the vendor of the negroes ; then he, too, must be sworn to these facts, else there is still no testimony. If a husband were allowed to cover his property against creditors and purchasers, by so simple a device as naming trustees, calling himself their agent, and by the mere act of so doing, assuming that there is a trust fund, the law, which is so watchful over mere voluntary settlements, would become literally blind. But besides the obvious necessity and reason for disregarding the mere expression contained in the bills of sale, there are not wanting adjudications to show that in such cases evidence of the trust fundís required. The case of Cadogan v. Kennett, Cowp. 434, and those in *415 1 Mod. 76, and 2 Ves. 10 and 11, are, in my judgment, very strong. And according to the last case of Cross v. Glode, 2 Esp. Rep. 514, the Court would require great strictness to prove the property purchased by the trust fund, after appearing as the husband’s. But suppose for a moment, that there were trust funds and trustees, who actually authorized the appropriation of the *wife’s money, in the purchase of these negroes, is there not great reason to say that they too have b committed a legal fraud upon the purchaser, in keeping the transaction a profound secret, and suffering their agent to exhibit the property to the world as his own, thereby assisting him to obtain money under a fictitious capital ? It is assisting one man to cheat another, which is not allowable. In all such cases, the party aiding and assisting, by furnishing another with a show of capital[1], makes whatever capital he so furnishes absolutely liable for so much as is obtained upon its credit. If the trustees have done so, they have committed a fraud upon A. Gordon, whose representative must recover the negroes, or their value. And the resort of Mrs, Goodwin would be evidently to those trustees for their more than unguarded use of her trust fund.
Qrimhe, for the motion. Martin, contra.
The motion is unanimously dismissed.
Bay, ISTott and Gantt, JJ., concurred.
Colcock J., was absent when the ease was argued.

 See Carmichael v. Buck, 10 Rich. 337, and cases there cited; Post. 544.